IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MONTREAL EVANS                                                                                              PLAINTIFF
ADC #800151

v.                                            4:22-cv-00123-JM-JJV

DEXTER PAYNE, Director, ADC; *et al.*                                                          DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.       INTRODUCTION**

Montreal Evans ("Plaintiff") is a prisoner in the Cummins Unit of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants Dexter Payne, Gary Musselwhite, Robert Pierce, Jim Babcock, Audrea Culclager, Ruthie Robinson, and an unknown Mailroom Supervisor ("Defendant Doe") violated his: (1) First Amendment right to free speech when they did not allow him to receive a novel containing sexually explicit text; and (2) Fourteenth Amendment rights to due process and/or equal protection of the law. (Doc. 2.) Plaintiff brings these claims against Defendants in their official and personal capacities. (*Id*. at 2.) He seeks injunctive and declaratory relief, as well as $5,000 in punitive damages. (*Id*. at 16-17.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to judgment as a matter of law. (Docs. 23-25.) Plaintiff has not responded, and the time to do so has expired. After careful consideration and for the following reasons, I recommend: (1) the Motion be GRANTED; (2) Plaintiff's claims against Defendants Payne, Musselwhite, Pierce, Babcock, Culclager, and Robinson be DISMISSED with prejudice; (3) Defendant Doe be DISMISSED without prejudice due to a lack of service; and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

Case 4:22-cv-00123-JM    Document 27    Filed 02/03/23    Page 3 of 12

III.  **FACTS**

The following facts are undisputed.  In December 2020, Plaintiff and another individual wrote a novel entitled *Original Player: You Get Out of the Game What you Put In* ("*Original Player*") and mailed the manuscript to Plaintiff's family for publication.  (Doc. 2 at 9; Doc. 23-4 at 4-6.)  In February 2021, Plaintiff's family mailed a published copy of the novel to Plaintiff at the Cummins Unit.  (*Id*.)  On March 22, 2021, Plaintiff received an unsigned memo from the "Unit Mailroom" saying *Original Player* had been received and was being sent to the Cummins Unit Publication Review Committee to determine whether it complied with ADC rules.  (Doc. 2 at 27.)  On April 20, 2021, Defendant Warden Aundrea Culclager sent Plaintiff a written notification that the Cummins Unit Publication Review Committee had rejected *Original Player* because it contained "sexually explicit content."[1]  (Doc. 23-4.)  Defendants Deputy Warden Pierce, Chaplain Babcock, and two non-parties were on that committee.  (*Id*.; Doc. 23-2).  Plaintiff appealed.  (*Id*.)  On May 7, 2021, the ADC Central Office Publication Review Committee (none of whom are defendants in this lawsuit) affirmed that decision, which was the final ruling on the matter.  (*Id.*)

IV.  **DISCUSSION**

    A.  **Defendants Payne, Musselwhite, and Robinson**

There is no vicarious liability in § 1983 actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").  Thus, a prisoner must prove that "each Government-official

---

[1] Administrative Directive 20-04 §  IV(B)(11), which was the ADC publications policy in effect during the relevant time in this case, prohibits "sexually explicit material, whether pictorial or textual, which could reasonably pose a threat to the safety, security, discipline, or good order of the institution, or is inconsistent with rehabilitative goals."  (Doc. 23-1 at 2-3.)

4

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Defendants Payne, Musselwhite, and Robinson say they are entitled to summary judgment because they did not personally participate in the decision to prevent Plaintiff from receiving *Original Player*. (Doc. 23-2; Doc. 23-1.) Plaintiff has not offered any contrary evidence. *See Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (at the summary judgment stage, a "plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding" in his favor). Accordingly, I recommend Plaintiff's claims against Defendants Payne, Musselwhite, and Robinson be dismissed with prejudice.

**B.** **Defendant Doe**

On February 10, 2022, the Court ordered service on the named Defendants, gave Plaintiff ninety days to identify the Doe Defendant and provide a service address for him or her, and cautioned Plaintiff the Doe Defendant would be dismissed without prejudice if he failed to do so. (Doc. 4.) The time to comply with that Order has expired. Accordingly, I recommend the Doe Defendant be dismissed without prejudice due to a lack of service. *See* Fed. R. Civ. P. 4(m); *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993). Because this was not an argument raised by Defendants in their Motion for Summary Judgment, if Plaintiff disagrees, he should file objections explaining why dismissal of the Doe Defendant is improper. *See* Fed. R. Civ. P. 56(f) (a court may grant a motion for summary judgment "on grounds not raised by a party" after "giving notice and a reasonable time to respond").

**C.** **Sovereign Immunity, Qualified Immunity, & the Physical Injury Rule**

Defendants argue sovereign immunity prevents Plaintiff from recovering monetary damages from them in their official capacities and qualified immunity prevents him from doing so in their personal capacities. That is correct, but neither immunity doctrine applies to Plaintiff's

5

request for injunctive and declaratory relief, which is the heart of this case. *See Hamner v. Burls*, 937 F.3d 1171, 1176 (8th Cir. 2019); *Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

Defendants also say 42 U.S.C. § 1997e(e) bars Plaintiff from recovering punitive damages because he did not suffer a physical injury as a result of the alleged constitutional violations. I disagree because the Eighth Circuit has held that § 1997e(e), which is known as the "physical injury rule," does not bar "nominal damages, punitive damages, and injunctive and declaratory relief."[2] *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004). Thus, the issue I must resolve is whether Defendants are entitled to summary judgment, as a matter of law, on the merits of Plaintiff's claims.

D.     **First Amendment Claim**

Prisoners have a First Amendment right to receive non-legal publications and photographs. *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). But it is not absolute. Instead, a prison may prevent an inmate from receiving a publication if it is "reasonably related to legitimate penological interests." *Id.*; *Sisney v. Kaemingk*, 15 F.4th 1181, 1190-97 (8th Cir. 2021); *Hum. Rts. Def. Ctr. v. Baxter Cnty., Ark.*, 999 F.3d 1160, 1164 (8th Cir. 2021). When making this determination, a court must consider: (1) whether there is a valid, rational connection between the prison regulation and a neutral, legitimate government interest; (2) whether alternative means exist for the inmates to exercise the constitutional right; (3) the impact accommodation would have on inmates, guards, and prison resources; and (4) whether ready alternatives exist to the prison regulation. *Id.*; *Turner*

---

[2] Citing *McAdoo v. Martin*, 899 F.3d 521, 527 (8th Cir. 2018), Defendants argue the physical injury rule bars punitive damages. I disagree because, in *McAddo*, the Eighth Circuit affirmed the trial court's determination that punitive damages were not warranted <u>based on the facts</u> and not because of the physical injury rule.

*v. Safley*, 482 U.S. 78, 89-91 (1987). The first factor is a "threshold condition that the regulation must satisfy to pass constitutional muster." *Sisney*, 15 F.4th at 1190. If the threshold is satisfied, the court must then "determine the regulation's constitutionality by balancing the remaining three factors." *Id.* And, when evaluating these factors "wide-ranging deference" should be given to prison authorities who are better equipped than the judiciary at making decisions regarding institutional safety, order, and discipline. *Thornburgh,* 490 U.S. at 408-409; *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

As to the first factor, the prison has the burden of proving a valid, rational connection between the restriction and a legitimate government interest. *Thornburgh*, 490 U.S. at 415; *Sisney*, 15 F.4th at 1190-1191. And, the "governmental objective must be a legitimate and neutral one . . . without regard to the content of the expression." *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (quoting *Turner*, 482 U.S. at 90). Defendant Pierce and Thomas Burns[3] explain in their sworn declarations that *Original Player* was rejected because it contained a detailed description of a male and female character engaging in oral sex and intercourse. (Docs. 23-2, 23-3.) My review of the two-page scene confirms that to be an accurate description.[4] (Doc. 23-4 at 4-6.) Defendant Pierce and Mr. Burns say, in their professional experience, such written material creates a security risk because inmates fight over it and use it as a "currency" in a prohibited "prison economy." (Doc. 23-3; Doc. 23-2.). According to Pierce and Burns, sexually descriptive texts can also be inconsistent with rehabilitative goals and used by inmates to masturbate, which is a violation of

---

[3] Mr. Burns, who is not a defendant, was a member of the ADC Central Office Publication Review Committee that affirmed the decision to prevent Plaintiff from receiving *Original Player.* (Doc. 23-3.)

[4] Defendant Pierce explains that just because only two pages (pgs. 175-176) were "flagged" as containing prohibited content, "it doesn't mean only two pages were questionable in the whole novel." (Doc. 23-2 at 3.)

7

ADC rules. (*Id.*)

It is well settled that security, institutional order, and rehabilitation are legitimate penological interests. *Simpson*, 879 F.3d at 289; *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 986 (8th Cir. 2004); *Dawson v. Scurr*, 986 F.2d 257, 261 (8th Cir. 1993). Based on the unchallenged evidence in the record, there is a valid, rational connection between prohibiting the receipt and possible dissemination of *Original Player* and the ADC's legitimate goals of preventing violence, maintaining order and security, and promoting rehabilitation. *See Sisney* 15 F.4th at 1192 (courts have "routinely held that there is a rational connection between censoring pornography and promoting legitimate penological interests"). And I find those objectives operate in a neutral fashion. *Id.* at 1192-93 (prohibiting two books because they contained "passages intended to serve no other purpose than to arouse the sexual desires of those reading the book" and not because they "advanced claims about human sexuality that the prison officials deemed subversive").

Broadly construing the Complaint, it appears Plaintiff is saying that prohibiting him from receiving a written description of consensual sex between two consenting adults is arbitrary or irrational because the Cummins Unit allows inmates to listen to watch television shows and movies containing sexual content. (Doc. 2.) But, as explained in the sworn declarations, written materials may be fought over, traded in a prison economy, and used privately to engage in prohibited sexual conduct. The same cannot be said for movies and television programs viewed openly within the prison. *Simpson v. Cnty. of Cape Girardeau, Mo.*, 879 F.3d 273, 279 (8th Cir. 2018) (the *Turner* test does not require "actual proof that a legitimate interest will be furthered by the challenged policy. The connection between the two need only be objectively rational"). Accordingly, I conclude Defendants have satisfied their burden as to the first, threshold element.

The second factor is whether Plaintiff has alternative means for exercising his right to free

8

speech. *Thornburgh,* 490 U.S. at 418. Here, it is undisputed the ADC's publication policy allows Plaintiff to receive other novels that do not threaten the security and order of the prison. Thus, I find this factor weighs in Defendants' favor. *See Id.* (the second factor is satisfied if the regulation permits "a broad range of publications to be sent, received, and read"); *Simpson*, 879 F.3d at 280 (the alternative means "need not be ideal. . . they need only be available").

The third factor is the impact allowing Plaintiff to have *Original Player* would have on other prisoners, guards, and the allocation of prison resources. *See Thornburgh,* 490 U.S. at 414-18. The declarations say allowing *Original Player* into the prison would create security and disciplinary risks to prisoners and guards, as well as interfering with some prisoner's rehabilitation. *See Sisney*, 15 F.4th at 1193 ("Turner's third factor weighs in the defendants' favor because sexually explicit material is likely to find its way through bartering to the prisoner who finds it most sexually stimulating, potentially interfering with rehabilitation"). And Plaintiff has offered no contrary evidence. Accordingly, I conclude this factor also weighs in Defendants' favor.

The fourth and final factor asks whether there are any "ready" or "easy" alternatives that "accommodate the prisoner's rights at a *de minimis* cost to penological interests." *Turner,* 482 U.S. at 90-91; *Simpson,* 879 F.3d at 281. As explained by the United States Supreme Court, this "is not a least restrictive alternative test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner,*482 U.S. at 90-91. Plaintiff has not offered any alternatives. And the Eighth Circuit has held prisons may censor books "in their entirety" if they contain "material" or "passages" "whose primary purposes is sexual arousal." *Sisney*, 15 F.4th at 1192-93 (upholding bans on two books containing sexual material because "alternatives such as page-by-page censorship and monitored reading rooms are not obvious, easy alternatives"); *see also Thornburgh*, 490 U.S. at 419 (1989)

9

(upholding a complete ban on a publication because removing prohibited pages would be an administrative inconvenience). Thus, I agree with Defendants this factor clearly weighs in their favor.

Because Defendants have prevailed on all four factors of the *Turner/Thornburgh* test, I conclude they are entitled to judgment as a matter of law on his claim. That being said, I commend Plaintiff on handwriting a novel while in prison, which is an impressive accomplishment. And I understand his frustration at not being able to have a published copy of it in prison. But as explained in the being of the analysis, the United States Supreme Court has held that wide deference should be given to prison officials when analyzing a free speech claim because they are better equipped than courts in making decisions regarding institutional safety, order, and discipline. Viewing the evidence in this manner, I conclude summary judgment is appropriate and recommend Plaintiff's First Amendment claim against Defendants Pierce, Babcock, and Culclager be dismissed with prejudice.

      E.    **Fourteenth Amendment Claim**

In the Complaint Plaintiff says, without much explanation, that Defendants violated his Fourteenth Amendment rights. (Doc. 2.) Defendants interpret this as due process claim and argue Plaintiff received the required procedural due process protections. *See Procunier v. Martinez*, 416 U.S. 396, 418 (1974) (due process requires "an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence"). It is undisputed here Plaintiff received written notice of the rejection and that he was able to appeal to the ADC Central Office Publication Review Committee, which was not involved in the original decision to reject his book.

Although it is unclear, I believe Plaintiff may be arguing the rejection *Original Player* also violated the equal protection clause of the Fourteenth Amendment. (Doc. 2 at 11-14.) To proceed with an equal protection claim, Plaintiff must have evidence: (1) he was treated differently from similarly situated inmates; and (2) the different treatment was the result of intentional and purposeful racial discrimination. *See In re: Kemp*, 894 F.3d at 909-10; *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008). There is no evidence in the record that Plaintiff was treated differently than similarly situated inmates. *See Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016) (to establish an equal protection violation, the "two groups must be similarly situated in all relevant respects"). To the contrary, it is undisputed that on April 29, 2021, the ADC Central Office Publication Review Committee decided that several other inmates from various ADC Units were not allowed to receive publications containing sexually explicit material. (Doc. 23-5.) And, his contention that the prison allows prisoners to view sexually explicit movies and television shows, while banning sexually explicit publications goes to the first factor of the *Turner/Thornbugh* rest, rather than forming the basis of an equal protection claim. *See In re Kemp*, 894 F.3d at 909 ("Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim"). Thus, I recommend summary judgment be granted, Plaintiff's Fourteenth Amendment claims against Defendants Pierce, Babcock, and Culclager be dismissed with prejudice.

### V.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment (Doc. 23) be GRANTED, and Plaintiff's claims against Defendants Payne, Musselwhite, Pierce, Babcock, Culclager, and Robinson be DISMISSED with prejudice.

2. Defendant Doe be DISMISSED without prejudice due to a lack of service.

3. This case be CLOSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 3rd day of February 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE